IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GJH-18-0145 |
| | * | |
| SEAN DEAN, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## OPPOSITION TO MOTION FOR RELEASE FROM CUSTODY

On April 20, 2020, the defendant filed a motion for release pending sentencing. The only novel claim in this motion is that COVID-19 is a changed circumstance meriting the defendant's release. This Court recently has denied similar claims by detainees (such as this defendant) housed in facilities run by the D.C. Department of Corrections ("DOC"). *See, e.g., United States v. Martin*, PWG-19-140 (D. Md.), ECF No. 209 (Order by Judge Grimm); *United States v. Bilbrough*, TDC-20-33 (D. Md.), ECF No. 76 (Order by Magistrate Judge Sullivan); *United States v. Parker*, TDC-18-344 (D. Md.), ECF No. 478 (Order by Magistrate Judge Simms); *United States v. Jefferson*, CCB-19-487 (D. Md.), ECF No. 25 (Order by Judge Blake); *United States v. Williams*, PWG-13-544 (D. Md.), ECF No. 94 (Order by Magistrate Judge Day); *United States v. Rivas*, TDC-19-417 (D. Md.), ECF No. 72 (Order by Magistrate Judge Sullivan); *United States v. Chriscoe*, TDC-20-46 (D. Md.), ECF No. 131 (Order by Magistrate Judge Coulson); *United States v. Beamon*, PX-19-570 (D. Md.), ECF No. 37 (Order by Judge Xinis); *United States v. Gibson-Bey*, RDB-19-563 (D. Md.), ECF No. 26 (Order by Magistrate Judge Coulson); *United States v. Gray*, GJH-19-407, ECF No. 120 (Order by Judge Hazel); *United States v. Tucker*, GJH-19-555 (D. Md.), ECF No. 26 (Order by Magistrate Judge Day); *United States v. Harper*, PX-19-231 (D. Md.), ECF No. 39 (Order by Magistrate Judge Sullivan); *United States v. Remarque*, PX-19-39 (D. Md.), ECF No.

90 (Order by Magistrate Judge Sullivan); *United States v. Sturmer*, GJH-18-468 (D. Md.), ECF No. 292 (Order by Judge Hazel); *United States v. Clemons*, RDB-19-438 (D. Md.), ECF No. 49 (Order by Chief Magistrate Judge Gesner); *United States v. Christian*, DKC-20-19 (D. Md.), ECF No. 23 (Order by Magistrate Judge Coulson); *United States v. Stewart*, PX-17-352 (D. Md.), ECF No. 279 (Order by Magistrate Judge Sullivan); *United States v. Ozor*, GJH-19-289 (D. Md.), ECF No. 63 (Order by Judge Hazel); *United States v. Pate*, PWG-17-236 (D. Md.), ECF No. 53 (Order by Magistrate Judge DiGirolamo); *United States v. Bilbrough*, TDC-20-33 (D. Md.), ECF No. 92 (Order by Judge Chuang); *United States v. Cleckley*, TDC-18-344 (D. Md.), ECF No. 485 (Order by Judge Chuang); *United States v.* Ray, TDC-19-215 (D. Md.), ECF No. 76 (Order by Magistrate Judge Day); *United States v. Attia*, PWG-19-193 (D. Md.), ECF No. 53 (Order by Magistrate Judge DiGirolamo); *United States v. Bland*, PWG-15-141 (D. Md.), ECF No. 95 (Order by Magistrate Judge Day). Because the defendant's generic argument about confinement conditions runs counter to the individualized determination required by the Bail Reform Act, and because the defendant has failed to make a sufficient factual showing to merit the relief sought (*i.e.*, release from custody), this Court should do the same and deny the motion, without a hearing.

**Background**

On October 29, 2019, the defendant pled guilty to conspiring to engage in sex trafficking of a minor. The agreed stipulation of facts to his plea agreement reflects that he conspired to traffic four girls (ages 15, 16, 17, and 17) and one woman in hotels in Timonium and Laurel, Maryland. ECF 89-1. Among other things, the defendant directed that the four girls and women advertise themselves for commercial sex acts on Backpage.com, transported or directed the transportation of the girls to the hotel rooms, and took money from the girls received in exchange for sex acts.

2

In the plea agreement, the parties stipulated that the statement of facts established "the commission of additional offenses," and particularly identifies "at least 18 U.S.C. § 1591(a) and (b)(2), and 18 U.S.C. § 2422(b)." Each of those other offenses carries at least a 10-year mandatory minimum sentence. The parties stipulated to a guidelines offense level of 41 in the plea, and also agreed to a sentence of 120 months of imprisonment pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Following the plea hearing, the defendant was remanded to custody of the U.S. Marshals pending sentencing.

The defendant's present motion for release pending sentencing is grounded on 18 U.S.C. § 3142(i) – a provision that does not apply on the face of the statute. Instead, the defendant's request for release should be analyzed under 18 U.S.C. § 3143(a)(2) which forecloses his release under these circumstances. Moreover, the defendant's only arguments in favor of release pertain to general conditions related to the COVID-19 pandemic. There is no individualized analysis particular to the defendant that details the "compelling reason" why Mr. Dean should be released, even if 18 U.S.C. § 3142(i) did apply. As detailed below, the motion should be denied without a hearing.

## Argument

The defendant relies on the COVID-19 outbreak at the D.C. Jail, the pretrial facility where he currently is housed. While the Government understands that a number of DOC inmates have been diagnosed with COVID-19,[1] and that others have test results pending, well over half of the DOC defendants previously diagnosed with COVID-19 have now recovered and returned to

---

[1] On April 13, 2020, a COVID-positive CTF detainee died. According to a press report, the detainee was diagnosed with the virus on April 7, 2020, and placed in isolation before being transferred to a hospital. According to a public court filing, the detainee was 51 years old, "has diabetes and has multiple health issues related to that diagnosis." The detainee had been charged with first-degree murder in D.C. Superior Court.

general population. Moreover, as described further below, DOC continues to take precautionary measures to prevent further transmission of COVID-19 in DOC facilities and treat those detainees who have tested positive, and DOC is now under the oversight of the United States District Court for the District of Columbia pursuant to litigation in that court.[2] The defendant's motion should be denied, without a hearing.

## I. Legal Standard

Because the defendant is awaiting sentencing, under 18 U.S.C. § 3143, the defendant *must* be detained unless the Court can conclude by clear and convincing evidence that the defendant is not likely to flee or pose a danger to any other person or the community. *See United States v. Adams*, DKC-257-3 (D. Md.), ECF No. 87 (Order by Judge Chasanow) (explaining § 3143(a)(2) requirements and holding defendant failed to meet them).

The defendant asserts 18 U.S.C. § 3142(i) as a basis for detention. However, § 3142(i) is limited by its own terms to an instance where a detention order "issues under subsection (e)" of § 3142. But the defendant's continued detention, post-conviction, is pursuant to § 3143 not § 3142(i). Although § 3142(i) is addressed below, it does not apply on its face. Moveover, the Bail Reform Act only permits the "temporary release" of a person in *pretrial* custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

---

[2] On April 19, 2020, United States District Court Judge Kollar-Kotelly issued an opinion and order in *Banks v. Booth*, 20-cv-849 (D.D.C.) granting in part and denying in part a motion for temporary restraining order (TRO) in a lawsuit brought against D.C. Jail and the Central Treatment Facility ("CTF"), and ordering D.C. Jail and CTF to take particular remedial steps discussed further below. *See Banks*, 20-cv-849, ECF 48 and 49. Most importantly, for the purposes of the defendant's motion, Judge Kollar-Kotelly did not order the release of prisoners as a remedy under the TRO. See ECF 49, at 26 ("The Court is not ordering the release of any inmates currently detained in DOC facilities.")

## II. The Defendant's Motion Should Be Denied Pursuant to 18 U.S.C. § 3143.

As set forth above, the defendant has already pleaded guilty and therefore is seeking release pending sentencing. Under 18 U.S.C. § 3143(a)(2), no hearing is necessary as the defendant cannot obtain the relief he is seeking. That provision provides:

> **(2)** The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—
>
> **(A)** **(i)** the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or **(ii)** an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> **(B)** the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

The defendant must be detained *unless* he meets all the requirements of § 3143. And § 3143(a)(2) imposes additional restrictions for releasing a defendant who has been found guilty and is awaiting sentencing if his crime(s) of conviction fall into certain categories covered by § 3142(f)(1), which lists serious offenses that trigger special considerations during a detention hearing prior to conviction. Because the defendant pled guilty/was convicted of 18 U.S.C. § 1594(c), which is an enumerated crime pursuant to § 3142(f)(1)(A) (note that 18 U.S.C. § 1594(c) is a felony within chapter 77 and is therefore a "crime of violence" pursuant to § 3156(a)(4)(C)) and § 3142(f)(1)(B) (maximum sentence of life imprisonment), the threshold requirements of § 3143(a)(2) applies.

Thus under § 3143(a)(2), as a threshold consideration, the needs to show that (1) there is a substantial likelihood that he will win a motion for acquittal or be given a new trial *or* (2) that the Government has recommended a sentence of no prison time. The defendant pleaded guilty

5

pursuant to a written agreement and has not moved to withdraw. Therefore, there is no possible avenue for acquittal and a new trial is not a possibility. And the Government and the defendant are bound by the plea agreement to recommend a sentence of 10 years of imprisonent. Before even determining whether the defendant can prove to this Court under a clear and convincing standard that he poses no danger to the community and is not a risk to flee, the defendant cannot meet the requirements under § 3143(a)(2)(A). Accordingly, this Court should deny the defendant's motion without a hearing. *See Adams*, Crim. No. DKC-257-003, ECF No. 87 (denying motion for a hearing on release where Defendant bank robber, who had pleaded guilty and had consented to detention hearing, failed to make a showing that COVID pandemic constituted extraordinary reason permitting his release and also failed to show by clear and convincing evidence that he was not a danger or a flight risk).

### III. Even if § 3142 Analysis Applied, The Defendant's Motion Ignores Nearly All of the § 3142 Factors, Which Weigh Heavily in Favor of Detention.

In this case, an examination of the § 3142 factors demonstrates that the detention order should remain in place.

#### A. The Nature and Circumstances of the Offense

The defendant pimped four girls and one woman for approximately two weeks. He advertised the minors as commercial sex works on the Internet. This is an extremely serious offense involving minors—one of the specific factors identified under § 3142(g)(1).

#### B. Weight of the Evidence

The defendant has admitted his guilt and stipulated to facts that encompass not only a conspiracy to traffic minors, but also multiple instances of substantive sex trafficking as well as coercion and enticement of minors. (This is one reason why a § 3142 analysis does not apply in

this context – the defendant's guilt is established, there is no question that he committed the crime he pled guilty of or the other ancillary crimes encompassed in his plea agreement.)

### C. The Nature and Seriousness of the Danger to the Community in the Event of the Defendant's Release

The release of the defendant would constitute a substantial danger to the community and, in particular, the victims of his sex trafficking activity. The Government proffers that the victims are concerned about attempts by the defendant to reach them during the pendency of this case. If released, the defendant may attempt to communicate with the victims either directly or indirectly to influence the victims' willingness to provide information at sentencing, to appear at sentencing, or to seek restitution. Should the Court determine that an analysis under § 3142 is necessary and that it is inclined to release the defendant, the Government requests that it be allowed to bring to the Court's attention additional information related to this factor.

### IV. D.C. Department of Corrections Has Established Procedures with Respect to the COVID-19 Outbreak that Are Now Being Overseen by the United States District Court for the District of Columbia.

The defendant's motion focuses almost exclusively on the health risks posed by COVID-19 and ignores the other § 3142 factors the Court must consider in determining whether a defendant poses a danger to the community and a flight risk. To be sure, the Bail Reform Act instructs courts to consider the "physical and mental condition" of the defendant as one of the factors in its analysis. 18 U.S.C. § 3142(g)(3)(A). Notwithstanding the COVID-19 outbreak, that factor does not weigh heavily, if at all, in favor of the defendant's release. The defendant does not allege that he has COVID-19. In this way, he is not seeking release based on his *actual* "physical and mental condition." Instead he relies solely on the possibility of becoming infected. As discussed below, however, DOC, which oversees the D.C. Jail and CTF, has implemented precautionary measures to mitigate this risk, continues to evolve its policies and procedures to address the unprecedented

COVID-19 pandemic, and is being closely supervised in its ongoing efforts as part of the *Banks* litigation in the United States District Court for the District of Columbia.

### A. DOC Has Instituted Precautionary Measures to Avoid Further Transmission of COVID-19 and Ensure Adequate Medical Care for Those Infected.

DOC has implemented a number of precautionary measures based on guidance from the D.C. Department of Health and the Centers for Disease Control ("CDC") to mitigate the risks associated with COVID-19, including restrictions on visitation to the facility, screening and quarantine of inmates, increased provision of masks and other personal protective equipment ("PPE") to staff and inmates, continued education of staff and inmates about the spread of COVID-19 and ways to combat it, cancellation of group activities, and restrictions on out-of-cell time. As additional measures are implemented, DOC continues to alert the public. *See* https://doc.dc.gov/page/coronavirus-prevention (last accessed April 22, 2020).[3]

The Government acknowledges that Judge Kollar-Kotelly found that many of DOC's measures prescribed by policy have not been properly implemented (at least as of the time independent inspectors visited the facility on three occasions between April 10 and April 12), further measures are needed, and further education of staff and inmates regarding the measures that exist is necessary. *See generally*, *Banks*, Mem. Op., ECF 49. Notably, however, Judge Kollar-Kotelly declined to grant the requested injunctive relief of releasing prisoners. *See id.* at 26.

As Judge Kollar-Kotelly recognized, "COVID-19 poses an unprecedented challenge and the precautionary measures taken by [DOC] are rapidly evolving." *Banks*, Mem. Op., ECF 49, at

---

[3] The DOC webpage is updated regularly with announcements, policy descriptions, and answers to frequently asked questions.

16; *see also id.* at 15 (recognizing that DOC's "response to this sudden and unprecedented pandemic is ongoing"). With the recognition that DOC's response continues to evolve, Judge Kollar-Kotelly issued an extensive order to remediate the deficiencies in DOC's implementation of its policies, including:

- ensuring proper triage process for sick call requests;
- ensuring medical staff are promptly informed of inmates who present with symptoms of COVID-19;
- providing better documentation of sick calls and the outcomes of same;
- ensuring proper monitoring of cell restrictions;
- ensuring appropriate housing for inmates in quarantine;
- consulting with public health professionals regarding strategies that can be implemented to strengthen COVID-19 related education;
- conducting additional staff training on use of thermometers;
- providing consistent and reliable access to legal calls;
- ensuring proper social distancing;
- ensuring proper use and communication to staff regarding use of PPE;
- strengthening the environmental health and safety program;
- assessing whether any additional security staff are needed to provide appropriate supervision for social distancing; and
- ensuring that all inmates, including those on isolation, have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters.[4]

---

[4] *See Banks*, Order, ECF 48; *see also* Mem. Op., ECF 49, at 27-31.

On April 17, 2020, DOC Director Quincy L. Booth also issued a memorandum to all employees and contractors entitled "Reminders and Updated COVID-19 Policies and Procedures." *See Banks*, Report Submitted by *Amicus Curiae* Pursuant to April 9, 2020 Consent Order, ECF 47, Ex. 11. Director Booth's memorandum, which directly addresses many of the concerns raised by the independent inspectors as part of the *Banks* litigation, both reminds staff of existing procedures and provides several updated procedures, including the following:

- **Social Distancing:** Correctional officers must enforce social distancing at all times. There shall be multiple daily announcements over the public address system reminding staff and resident of the need for social distancing. Strict limits also are placed on the number of people who can be out of their cells at one time (generally no more than six). Group activities shall continue to be suspended during the emergency period.

- **Residential Out of Cell Time:** Inmates are restricted to one hour out of their cells each day, and there will be PA announcements reminding inmates of this rule.

- **Personal Protective Equipment:** DOC shall conduct refresher courses on the proper use of PPE for staff during roll call on each shift and such courses shall be documented. DOC's medical staff and sick call staff shall visit DOC housing units to refresh staff and residents on PPE use, COVID prevention, and how to submit sick call slips for medical units, and such refreshers shall be documented.

- **Isolation Units:** All residents in isolation shall be allowed to shower once per day, shall be allowed 30-minute legal calls per day on an unmonitored "rolling phone" that will be transported to the inmate's cell, and shall be provided tablets with entertainment and education content, as well as activity packets.

- **Unit Common Area and Cell Cleaning:** At the beginning of each shift, correctional officers shall document the amount of cleaning supplies available and report any shortages, provide cleaning products on towels or paper towels for inmates to clean cells, verify and document that common areas are cleaned, and post listings of cleaning products available to residents in each housing unit.

- **Linen and Laundry Exchanges:** Each week, DOC shall provide residents with fresh clothing, undergarments, and linens, and collect used items.

- **Contractor and Staff Screening and Hygiene:** All staff and contractors entering DOC facilities will continue to undergo a COVID-19 screening, including temperature checks and answering questions related to COVID-19 symptoms.

> Staff conducting the screenings will be re-trained in the use of thermometers. Following the screening, staff shall properly wash their hands before entering the facility. Non-essential visitors will be excluded from the facility. Any staff that have been in sustained, close contact with someone who has tested positive will be informed.
>
> - **Access to Legal Calls:** All residents shall be allowed 30-minute legal calls daily. DOC staff will also cooperate to facilitate incoming calls from attorneys.
>
> - **Medical Care:** If DOC staff observe an inmate exhibiting symptoms of COVID-19, staff shall direct that person to medical staff.
>
> - **Additional Measures:** DOC is also working to make better use of single cells where possible, is increasing staff through the Medical Reserve Corps to assist with provision of medical care and temperature checks, is trying to obtain additional tablets for residents to use during the duration of the emergency period, is increasing monitoring of inmates placed on quarantine, and will request deployment of mobile COVID-19 testing within DOC facilities when it becomes available.

The defendant's motion does not allege that these enhanced measures are insufficient to address the needs of detainees generally or the defendant in particular. Rather, the defendant's motion simply recounts the deficiencies identified by Judge Kollar-Kotelly that DOC has been ordered to remediate under the close supervision of the United States District Court for the District of Columbia. This information does not merit the defendant's release.

Indeed, Judge Kollar-Kotelly's Order specifically denied the *Banks* plaintiffs' request for the release of prisoners as not called for by the record. *See, e.g., Banks*, ECF 49 ("The Court is not ordering the release of any inmates currently detained in DOC facilities."). The *Banks* Order instead imposed specific remedies for the specific deficiencies noted in that case. Likewise, opinions by members of this Court have rejected wholescale release as an appropriate remedy for problems in the jails, and have favored remediation of any identified problems instead. *See Williams*, PWG-13-544 (acknowledging that DOC has taken significant measures to stem the tide of the pandemic, and recognizing that "[s]hould the unfortunate event occur, the correctional

11

authorities have in place a plan of action that should not be summarily embraced or discarded. Nor does it follow that a presumption of release materializes without more details about the impact upon [the defendant] directly."). As Judge Chuang recognized, even "[i]f the conditions prove to be unacceptable, the solution for [the defendant] will be for the Court to require improvements to the conditions or to have him moved to another detention facility, not to order [the defendant] to be released into the community." *Cleckley*, TDC-18-344 (D. Md.), ECF No. 485.

In short, the DOC's response to this unprecedented pandemic is rapidly evolving as it endeavors to implement measures recommended by the CDC and D.C. Department of Health, as well as the series of measures ordered by Judge Kollar-Kotelly. COVID-19 is not a problem that afflicts DOC facilities alone, and DOC continues to improve its response to the outbreak in its facilities. The defendant has not shown that any risk he faces of contracting COVID-19 within DOC facilities merits release when weighed against the other Bail Reform Act factors this Court must take into account and the continued corrective measures being implemented by DOC. *Gray*, GJH-19-0407 (D. Md.), ECF 120 ("COVID-19 is not a virus that has specifically attacked the D.C. Jail but, rather, a global pandemic that all citizens of the world are struggling to combat. There is no reason for the Court to believe that the jail is not taking reasonable precautions to prevent spread within the facility nor is there reason to believe that [the defendant] would not be provided with appropriate medical care if he were unfortunate enough to join the hundreds of thousands of people who have been inflicted with the virus.").

### B. The Defendant's Individual Circumstances Do Not Merit Release.

The defendant has not identified any health condition that would support his release.

In any event, this Court has recently denied a number of motions by detainees claiming that they had medical conditions that made them uniquely vulnerable to COVID-19, including

detainees with far more serious medical conditions than [defendant]. *See, e.g.*, *Martin*, PWG-19-140 (D. Md.), ECF No. 209 (denying motion for pretrial release by detainee suffering from "diabetes, high blood pressure, asthma, and pain"); *Bilbrough*, TDC-20-33 (D. Md.), ECF No. 76 (denying a similar motion by a defendant suffering from diabetes, even though "experts on COVID-19 have stated that individuals with diabetes are at a higher risk of experiencing more serious complications if infected with the virus"), *aff'd* ECF No. 92 (Order by Judge Chuang); *Parker*, TDC-18-344 (D. Md.), ECF No. 478 (denying motion for pretrial release by a detainee who "suffered an aneurysm (in the past), had prostate cancer (now in remission), and presently suffers from diabetes, the latter two conditions having compromised his immune system and/or put him at a higher risk of an inability to fight infection"); *Jefferson*, CCB-19-487 (D. Md.), ECF No. 25 (asthma); *Williams*, PWG-13-544 (D. Md.), ECF No. 94 (67-year-old defendant); *Gray*, GJH-19-407, ECF No. 120 ("open heart surgery as a child, requires regular EKGs, and continues to experience a diminished immune system, heart flutters, and shortness of breath"); *Tucker*, GJH-19-555 (D. Md.), ECF No. 26 ("a respiratory condition (severe asthma), high blood pressure, and high cholesterol"; "Defendant at no point provides medical records which substantiate his claims"); *Christian*, DKC-20-19 (D. Md.), ECF No. 23 (asthma); *Pate*, PWG-17-236 (D. Md.), ECF No. 53 (asthma); *Attia*, PWG-19-193 (D. Md.), ECF No. 53 (asthma, migraines); *Bland*, PWG-15-141 (D. Md.), ECF No. 95 (asthma, seizures).

While the COVID-19 virus is new, health claims by detainees are not. Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where otherwise detention would be warranted. *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008). These cases recognize that reasonably necessary treatments are available in prison, and often times a prison setting will provide care

superior to what a defendant can obtain on the outside. *See United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999). In this case, the defendant simply has not made a factual record that his medical needs will not be met while detained. Granting a defendant's motion for release based on the general threat of harm posed by COVID-19 to all flies in the face of the defendant-specific analysis required by 18 U.S.C. § 3142(f).

Furthermore, the defendant's proposed placement outside of the facility does not eliminate the danger of contracting COVID-19. *See United States v. Gray*, GJH-19-407, ECF No. 120 (recognizing "the unfortunate reality that public health officials are struggling to contain the spread of the virus in the general public as well").

### C. Traditional Location Monitoring Is No Longer An Option for Pretrial Services.

Pretrial Services now has diminished ability to monitor defendants on home detention. Due to COVID-19, the Court has suspended traditional electronic home monitoring that relies on radio frequency or GPS to provide real-time information about a defendant's whereabouts. Although other forms of home detention are still available, "none provides 24/7 monitoring and notification." *Gibson-Bey*, RDB-19-563 (D. Md.), ECF 2, at 3 n.2. Accordingly, Pretrial Services' ability to ensure that defendants do not become a flight risk or pose a danger to the community has been significantly curtailed.

Furthermore, electronic monitoring simply is not a replacement for incarceration, as home monitoring does not prevent others from coming to the defendant's residence, which increases the risk of the defendant violating the law, as well as his exposure to COVID-19. *See, e.g., United States v. McKenzie*, 18 Cr. 834 (PAE), ECF No. 457 (S.D.N.Y. April 6, 2020) (defendant who had been granted pre-sentence release based on the risk of becoming ill from COVID-19 immediately

violated his release conditions and risked the health of his community by hosting a welcome-home party with numerous others).

### V. Even If § 3142(i) Applied, The Defendant Has Not Met His Burden of Showing that Temporary Release is "Necessary" Under 18 U.S.C. § 3142(i)

The Court should also deny the defendant's request for temporary release under 18 U.S.C. § 3142(i). As set forth above, under the terms of § 3142(i) itself and under the controlling terms of § 3143(a)(2), § 3142 simply does not apply in this circumstance. But even if it did, the defendant is not a good candidate for release.

Section § 3142(i) of the Bail Reform Act permits the "temporary release" of a pretrial detainee "in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." The defendant bears the burden of showing that temporary release is "necessary" under this section. *See United States v. Dupree*, 833 F. Supp. 2d 241 (E.D.N.Y. 2011); *United States v. Stephens*, No. 15-cr-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020). Moreover, requests for temporary release cannot "be analyzed in a vacuum"; rather, the court must "balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." *United States v. Cox*, No. 2:19-cr-00271, 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020); *see also United States v. Eley*, No. 20 CR 78-3, 2020 WL 1689773, at *1 (S.D.N.Y. Apr. 7, 2020) (compelling reasons under § 3142(i) must be balanced "against the risks that were previously identified and resulted in an order of detention") (internal quotation marks and citation omitted).

Recently, in *United States v. Green*, CCB-19-0539 (D. Md. Apr. 15, 2020) (Coulson, J.), the court addressed a § 3142(i) temporary-release request by an inmate at CTF who had "underlying health conditions of asthma, high blood pressure and chronic obstructive pulmonary

15

disease[,] putting him at particular risk for complications should he contract [COVID-19]." *Id.* at 2. The court found, first, that temporary release was not necessary for preparation of the defense, as "the restrictions imposed at CTF are reasonable, necessary, and temporary," and "all cases have been postponed by this Court's most recent Standing Order through June 5, 2020." *Id.* at 5. Turning to the question whether there was "other compelling need" for release, the court focused on four factors: "(1) [t]he original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and, (4) the likelihood that a defendant's release would increase the COVID-19 risks to others." *Id.* at 5–6 (citing *United States v. Clark*, 2020 WL 1446895 (D. Kan. Mar. 25, 2020)). The court found that notwithstanding the defendant's underlying health conditions, the other factors weighed against release. First, the original reasons for detention were "strongly in the Government's favor." Second, the defendant's poor performance on community supervision in the past raised concerns "not only that he would comply with release conditions, but also that he would comply with advice from public officials and public health experts regarding COVID-19 precautionary measures." *Id.* at 6. Finally, the court found that the family members whom the defendant proposed as third-party custodians were not "appropriate person[s]" within the meaning of § 3142(i) who could ensure the defendant's compliance with conditions of release. *Id.* at 6–7.

As far as the Government is aware, every other judge in this district to have considered a request for temporary release under § 3142(i) based on the COVID-19 pandemic has denied it. *See United States v. Brown*, No. CCB-19-576, 2020 WL 1554059 (D. Md. Apr. 1, 2020) (Copperthite, J.) (finding that § 3142(i) "relates to temporary release to the U.S. Marshals or other authority for situations such as funeral attendance or other limited specific reasons, not the

16

pandemic outbreak of COVID-19"); *United States v. Moran*, No. SAG-19-0585, 2020 WL 1663366 (D. Md. Apr. 3, 2020) (Copperthite, J.) ("It is this Court's position that 3142(i) is reserved for very limited purposes such as funeral attendance or other law enforcement (USMS) supervised activity, not release during a pandemic."); *United States v. Parker*, No. TDC-18-0344 (D. Md. Mar. 21, 2020) (Chuang, J.) (denying release under § 3142(i) based on risk of contracting COVID-19, even though defendant had diabetes and other serious health conditions); *United States v. Arsenio Cleckley*, TDC-18-0344 (D. Md. Apr. 8, 2020) (Chuang, J.) (denying release under § 3142(i), notwithstanding COVID-19 outbreak at CTF where defendant was housed, where defendant had pled guilty to gun and drug offenses and did not have any "high-risk health conditions").

Courts in other districts have agreed that generalized claims about COVID-19—whether centered on the risk of becoming ill from the disease, or unavoidable disruptions in access to counsel during the pandemic—do not constitute compelling reasons justifying temporary release under § 3142(i). *See, e.g.*, *United States v. Joshua White*, No. 19-mj-00203 (DAR) (D.D.C. Apr. 2, 2020) (finding that COVID-19 outbreak in D.C. facility where defendant was housed was not a "compelling reason" supporting release under § 3142(i) where defendant did "not claim to have health conditions or other circumstances that make him particularly vulnerable to the virus," and cited only generalized risks that "apply to all incarcerated individuals"); *United States v. Lee*, No. 19-cr-298 (KBJ), 2020 WL 1541049 (D.D.C. Mar. 30, 2020) ("[T]his Court agrees with those recent precedents that have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-10 admittedly creates for all members of our society."); *United States v. Chambers*, No. 20-CR-135 (JMF), 2020 WL 1530746 (S.D.N.Y. Mar. 31, 2020) (finding that temporary release was not "necessary" for

the preparation of the defense where defendant's pretrial conference was "not even scheduled for another month"); *United States v. Anderson*, No. 19-CR-771 (S.D.N.Y. Mar. 27, 2020) (finding that the risk of contracting COVID-19 was not a "compelling reason" justifying temporary release under § 3142(i) where defendant was a "healthy 40-year-old man, with no unusual medical conditions"); *United States v. Clark*, No. 19-40068, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) (denying release based on individualized assessment of § 3142(g) risk factors, even though defendant had diabetes, and finding that "a defendant should not be entitled to temporary release under § 3142(i) based solely on" COVID-19 concerns); *United States v. Cox*, No. 2:19-cr-00271, 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020) (rejecting request for temporary release under § 3142(i), finding that danger to the community outweighed risk presented by COVID-19 for 60-year-old defendant with diabetes, and jail's temporary suspension of in-person legal visits did not render release necessary for preparation of the defense). The defendant's generalized claims do not require release.

## Conclusion

For the foregoing reasons, the Court should deny the defendant's motion for release pending sentencing.

Respectfully submitted,

Robert K. Hur
United States Attorney

/s/      *Joseph R. Baldwin*
Joseph R. Baldwin
Assistant United States Attorney

18