**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | Criminal Action No. 18-cr-00145-LKG |
| | ) | |
| v. | ) | Dated: April 28, 2026 |
| | ) | |
| SEAN DEAN, | ) | |
| | ) | |
| Defendant *pro se.* | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER ON
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

## I.      INTRODUCTION

Defendant *pro se*, Sean Dean, has moved for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A) and Section 603(B) of the First Step Act.  ECF No. 152.  This motion is fully briefed.  ECF Nos. 152 and 157.  No hearing is necessary to resolve this motion. *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court **DENIES** Mr. Dean's motion for compassionate release.

## II.     BACKGROUND AND PROCEDURAL HISTORY

The Defendant, Sean Dean, is currently serving a 120-month sentence of imprisonment after having been convicted of conspiracy to engage in sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c). ECF No. 140.

As background, in 2019, Mr. Dean pleaded guilty to the offense of conspiracy to engage in sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c).  ECF Nos.  88, 89 and 89-1.  Mr. Dean stipulated to the following facts in the Plea Agreement:

> From at least in or about December 2017 and continuing until in or about January 2018, in the District of Maryland and elsewhere, the Defendant, SEAN DEAN ("DEAN"), did knowingly conspire to recruit, entice, harbor, transport, and/or maintain five females- Girl 1 (who was 15 years old at the time), Girl 2 (who was 17 years old at the time), Girl 3 (who was 16 years old at the time), Girl 4 ( who was 17 years old at the time), and Woman 1 (who was 18 years old at the time) with the intention that Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1 would be caused to engage in commercial sex acts. DEAN did so, having had a reasonable opportunity to observe Girl 1, Girl 2, Girl 3, and Girl 4, knowing and in reckless disregard of the fact that Girl 1, Girl 2, Girl 3, and Girl 4 had not attained the age of 18

1

years. DEAN utilized social media, such as Facebook and Instagram, and one or more cellular telephones to recruit, direct, monitor, persuade, induce, entice, coerce, and otherwise communicate with Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1.

DEAN used one or more cellular telephones to communicate with his Co-Defendant ("CoConspirator l") and at least one other individual ("Co-Conspirator 2") about the sex trafficking conspiracy. [….] For example, on December 28, 2017, DEAN texted Co-Conspirator 1, "Tomorrow morning bro we goin go get this money and get the kids some furniture," and Co-Conspirator 1 responded, "We on da same page." In furtherance of the sex trafficking enterprise, DEAN and/or Co-Conspirator 1 rented rooms at hotels in Timonium and Laurel, Maryland, to be used for the purpose of commercial sex acts by Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1. For example, on January 1, 2018, DEAN told Woman 1: "I'm getting some more hotel rooms for us for tomorrow." DEAN, Co-Conspirator 1, and others transported Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1 to various hotels, where DEAN, Co-Conspirator 1, and various combinations of Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1 stayed for multiple days at a time. DEAN managed customer demand when one or more of the females were absent. For example, DEAN texted Woman 1 on January 7, 2018: "Send me y'all sales [Girl 3] and [Girl 2] goin do it while y'all gone."

While in the hotel rooms DEAN and/or Co-Conspirator 1 rented, Girl 1, Girl 2, Girl 3, Girl 4, and/or Woman 1, at DEAN's direction, utilized "Backpage.com" to advertise the females for commercial sex acts. "Backpage.com" commonly was used by prostitutes and "pimps" for such advertisements. The advertisements posted contained pictures of the females in provocative poses and provided contact information for clients, or "johns," to secure an appointment or "date" with one or more of the females. On January 1, 2018, after being asked for help posting by Woman 1 ("I'm tryna post that shit geeking you know anybody that could come post me or show me"), **DEAN** responded, in part, ". . . I'll get somebody to show us how to do it." **DEAN** communicated with **Co-Conspirator 2** on multiple occasions to get assistance with utilizing Backpage.com, and CoConspirator 2 provided instructions to one or more of the females about how to post advertisements on Backpage.com.

Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1 were required to share a portion of the proceeds from any commercial sex acts with DEAN and Co-Conspirator 1. For example, on January 6, 2018, DEAN texted Woman 1: "Ard so I let you get ya coins back up a lil bit now it's time for us all to eat starting tonight whatever you make we split 50-50 same goes for [Girl 3]?" Girl 1, Girl 2, Girl 3, and Woman 1 participated in commercial sex acts while in the hotel rooms rented by DEAN and/or Co-Conspirator 1 and shared a portion of the proceeds from such commercial sex acts with DEAN and Co-Conspirator 1, who benefitted financially from such proceeds.

During the first week of January 2018, DEAN and/or Co-Conspirator 1 transported Girl 1, Girl 2, Girl 3, and Woman 1 to a hotel in Timonium, Maryland. Girl 1, Girl 2, Girl 3, and Woman 1 were at that hotel for approximately one week and met with multiple "johns" per day for the purpose of engaging in commercial sex acts. On January 1, 2018, Co-Conspirator 1 texted DEAN, "Yoda Bitches need da room" and then followed up with a text stating that everything was "good." On January 2, 2018, DEAN texted Girl 1 and, to

2

persuade her to engage in prostitution, told her that he was "trying give y'all a chance to make some real money travel and fuck wit nothing but rich white ppl." DEAN texted with one or more of the females to confirm that the females had "posted," or placed advertisements, on Backpage.com. On January 6, 2018, DEAN told Girl 1 to bring lingerie to wear in photos. On January 7, 2018, DEAN responds to a request by Girl 1 for food by texting "Come on now I'm not bout to have you work for nothing." Girl 1, Girl 2, Girl 3, and/or Woman 1 placed advertisements on Backpage.com from the hotel in Timonium where DEAN and Co-Conspirator 1 had transported them. Girl 1, Girl 2, Girl 3, and Woman 1 shared a portion of the proceeds earned from their commercial sex acts with DEAN and Co-Conspirator 1.

During the second week of January 2018, DEAN and Co-Conspirator 1 transported Girl 1, Girl 2, Girl 3, and Woman 1 to a hotel in Laurel, Maryland. DEAN, Co-Conspirator 1, Girl 1, Girl 2, Girl 3, and Woman 1 stayed at this hotel for one or two days. Girl 1, Girl 2, Girl 3, and Woman 1 saw multiple "johns" and engaged in commercial sex acts while at this hotel and shared a portion of the proceeds from such commercial sex acts with DEAN and Co-Conspirator 1, who benefitted financially from such proceeds. On January 8, 2018, DEAN provided Co-Conspirator 1 Girl 4's phone number. Co-Conspirator 1 later responded to DEAN that Girl 4 was not answering her phone and DEAN should call her. DEAN subsequently recruited Girl 4 to come to the hotel where DEAN, Co-Conspirator 1, Girl 1, Girl 2, Girl 3, and Woman 1 were located in order to engage in commercial sex and provide a portion of the proceeds to DEAN and Co-Conspirator 1.

At times, DEAN had to persuade, entice, or induce the females to continue working for him. On January 9, 2018, DEAN texted Woman 1, complaining that he was not receiving enough proceeds from Girl 1, Girl 2, Girl 3, and Woman 1. DEAN wrote, "I feel like I'm being pimped and I'm the pimp . . . . [A]t this point if you can't respect my wishes and pay me how I'm suppose to be paid then you and [Girl 3] can go to [Co-Conspirator 2] or do y'all own thing cuz I'm tryin win . . ."

On January 10, 2018, DEAN texted Co-Conspirator 2 and told him that DEAN had a white girl who was a "bread winner" but DEAN needed help with her and wanted Co-Conspirator 2 to "come holla at [DEAN]." Also on January 10, 2018, DEAN texted Girl 2 to "tell white girl don't go to sleep I need one of y'all to answer the phone." Later on January 10, 2018, DEAN texts Girl 1 and Girl 2: "I'm broke as shit fr I just paid some bills how much y'all got for me?"

On or about January 11, 2018, DEAN and/or Co-Conspirator 1 transported Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1 to a second hotel in Laurel, Maryland. Co-Conspirator 1 went to the front desk and obtained keys to the rooms that were intended for Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1 to use for commercial sex acts. Then, DEAN, Girl 1, Girl 2, Girl 3, Girl 4, and Woman 1 entered the hotel through a side door and later entered rooms on the fourth and fifth floors of the hotel. DEAN and an associate also transported Girl 4 to the hotel. At one point, through text messages, DEAN instructs Girl 4 to answer the phone in the room she is in to induce her to make prostitution dates: "It's cool answer from now on they are dates." Although DEAN transported Girl 4 to the hotel for the purpose of Girl 4

3

engaging in commercial sex acts and DEAN had instructed Girl 4 to engage in commercial sex acts, she did not do so.

Law enforcement subsequently responded to this hotel due to a complaint about the smell of marijuana coming from two different rooms rented by DEAN and/or Co-Conspirator 1. In the two rooms, law located Girl 1, Girl 2, Girl 3, and Woman 1, along with condoms and personal lubricant, which was to be used in connection with commercial sex acts. Girl 4 had left the hotel before law enforcement arrived. After law enforcement arrived, DEAN and Co-Conspirator 1 attempted to avoid detection by leaving through different doors. DEAN and Co-Conspirator 1 subsequently met at the vehicle used to transport Girl l, Girl 2, Girl 3, Girl 4, and Woman 1 to the hotel, and fled the area.

After fleeing the area, DEAN exchanged text messages with Woman 1 and explained: "I left I can't fuck around with the police and [Girl 3] under age." DEAN also directed Woman 1 to "Delete our messages," explaining that he left the hotel to avoid the police because one of the fact that Girl 3 was "under age."

ECF No. 89-1.

On March 14, 2018, Mr. Dean was charged in a two-count criminal Indictment with conspiracy to engage in sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c).   ECF No. 25.   On October 29, 2019, Mr. Dean was charged in a one-count criminal Information with conspiracy to engage in sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c).   ECF No. 85.

On October 29, 2019, Mr. Dean pleaded guilty to the offense of conspiracy to engage in sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c).   ECF Nos.  88, 89 and 89-1.   The Court held a sentencing hearing on July 8, 2021.   ECF No. 137.   During the sentencing hearing, the Court sentenced Mr. Dean to 120 months imprisonment, to be followed by 10 years of supervised release.   ECF No. 140.   Mr. Dean's current computed day of release, assuming good time credit, is November 30, 2026.   ECF No. 157-1.

On March 10, 2025, Mr. Dean filed a handwritten motion for compassionate release seeking release upon the grounds of post-incarceration rehabilitation.   ECF No. 152.   On April 28, 2025, the Government filed a response in opposition to Mr. Deans' motion.   ECF No. 157.

Mr. Dean's motion for compassionate release having been fully briefed, the Court resolves the pending motion.

### III.  LEGAL STANDARDS

#### A.  Compassionate Release

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception to this rule is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

In this regard, title 18, United States Code, section 3582(c)(1)(A)(i), commonly known as the "compassionate release" provision, provides a statutory vehicle to modify a defendant's sentence. *United States v. Wiggins*, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020).  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  *Id*.  The statute originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  And so, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Jarvis v. Stansberry*, 2008 WL 5337908, at *1 (E.D.Va. Dec. 18, 2008) (denying motion for compassionate release because Section 3582 "vests absolute discretion" in the BOP).

In December 2018, Congress significantly modified the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  This Court has held that as amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a sentence of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  *Wiggins*, 2020 WL 4436373, at *2.  And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate release. *Id*.

Pursuant to Section 3582(c)(1)(A), the Court may modify a defendant's sentence if, "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," it finds that:

> (i)   extraordinary and compelling reasons warrant such a reduction;
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Wiggins*, 2020 WL 4436373, at *3.  And so, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the United States Sentencing Commission (the "Commission") in U.S.S.G. § 1B1.13.  *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A).  The Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t).  Relevant to the pending motion, the Sentencing Guidelines provide that:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.  However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d).

## IV.   ANALYSIS

In his motion for compassionate release, Mr. Dean argues that he is entitled to compassionate release, because: (1) "he has a detailed business plan to move on" when he is released from prison; (2) he has served more than 70% of his sentence; and (3) he wishes to return home to care for his children.  ECF No. 152.  And so, Mr. Dean requests that the Court reduce his sentence to time served.  ECF No. 152 at 3.

The Government counters that Mr. Dean is not entitled to compassionate release, because he has not shown "extraordinary and compelling" reasons for compassionate release and the Section 3553(a) factors do not warrant such relief.  ECF No. 157.  In this regard, the Government argues

6

that Mr. Dean has neither shown remorse for his crimes, nor established his rehabilitation. *Id*. at 4-6. The Government also argues that compassionate release would undermine the purpose of Mr. Dean's sentence, given the serious nature of his crimes. *Id*. at 6-7. And so, the Government requests that the Court deny Mr. Dean's motion for compassionate release. *Id*. at 7.

For the reasons that follow, Mr. Dean has not shown "extraordinary and compelling" reasons for compassionate release, based upon his alleged rehabilitation, the length of his sentence and/or his desire to care for his children. The applicable Section 3553(a) factors also do not support compassionate release. And so, the Court DENIES Mr. Dean's motion for compassionate release.

**A.     The Defendant Is Not Eligible For Compassionate Release**

As an initial matter, Mr. Dean has not shown an extraordinary and compelling reason warranting compassionate release. To be entitled to compassionate release under Section 3582(c)(1)(A)(i), Mr. Dean must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Commission in U.S.S.G. § 1B1.13. 18 U.S.C. § 3582(c)(1)(A). In this regard, the Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A) and the Sentencing Guidelines provide that:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d); *see also United States v. Davis*, 99 F.4th 647, 658–59 (4th Cir. 2024) (Rehabilitation alone cannot be considered an extraordinary and compelling reason for release; but it may be considered as one factor among several under Section 3582(c)(1)(A)). And so, rehabilitation alone is not sufficient to warrant compassionate release under Section 3582(c).

In this case, Mr. Dean fails to fully explain the nature of his post-incarceration rehabilitation and how such rehabilitation supports compassionate release. In his motion for compassionate release, Mr. Dean argues that he has "a detailed business plan" to move on, once released from prison. ECF No. 152 at 2. Mr. Dean also states that he plans to "create major content" regarding engaging with children, which is to be posted online, and that he will "heal families" through posting this online content. *Id*.

In addition, Mr. Dean argues that compassionate release is warranted in this case, because he has completed more than 70% of his sentence and one of his daughters is in the custody of child protective service. *Id*. at 3. And so, Mr. Dean contends that his rehabilitation, and the need to care for his children, warrant his immediate release. *Id*.

As the Government correctly observes, Mr. Dean's motion for compassionate release lacks specific details regarding the steps that he has taken towards rehabilitation. The motion also lacks sufficient details to explain how Mr. Dean would secure employment, housing and other resources to launch his online platform and care for his children. Also absent from this motion is any expression of remorse or acceptance of responsibility regarding the victims of his crimes. (Generally stating that "I will right my wrongs with the message I will spread all around the world" and "I'm very remorseful for what I've done"). ECF No. 152 at 2 and 3. The Court also observes that, while commendable, Mr. Dean's alleged rehabilitation during his period of incarceration, alone, is not an extraordinary and compelling reason to justify compassionate release.

Given this, Mr. Dean has not shown an extraordinary and compelling reason for compassionate release. 18 U.S.C. § 3582(c)(1)(A). And so, the Court must DENY his motion for compassionate release. *See United States v. Martin*, 916 F.3d 389, 396–97 (4th Cir. 2019)(courts must provide an individualized explanation for the denial of compassionate release where the defendant showed dramatic post-conviction rehabilitation); *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (similar).

### B.    The Section 3553(a) Factors Do Not Support Compassionate Release

The relevant factors that the Court considers under Section 3553(a) also do not support compassionate release for several reasons. First, Mr. Dean stands before the Court after having been convicted of conspiracy to engage in sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c). ECF No. 140. This is a very serious offense, as reflected in the 120-month sentence of imprisonment imposed by this Court.

Second, the evidence before the Court shows that Mr. Dean was the leader of the human trafficking conspiracy charged in this case and that he, among other things, monitored the minor victims. Given this, the Court remains concerned that Mr. Dean would pose a danger to the community if he were released from prison before the completion of his sentence.

The Court is also concerned that compassionate release would undermine the need to deter Mr. Dean and others from committing similar offenses. And so, requiring that Mr. Dean complete

8

his sentence of incarceration would both protect the public and deter Mr. Dean from future criminal conduct.

Lastly, the Court observes that the 120-month sentence imposed in this case falls below the minimum applicable guidelines sentence of at least 324 months imprisonment.  And so, a further reduction of Mr. Dean's sentence would also result in a period of incarceration that falls well below the applicable Guidelines Range, notwithstanding the fact that Mr. Dean has served more than 70% of his sentence to date.

Given these concerns, the Court declines to reduce Mr. Dean's sentence on compassionate release grounds.  And so, the Court **DENIES** Mr. Dean's motion for compassionate release.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Dean's motion for compassionate release (ECF No. 152).

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge